All right, our next case and our final case of the morning is United States v. Gonzales, number 18-2170. Counsel? May it please the Court, Ms. Ong. The District Court erred in this case by applying a six-level enhancement to Mr. Gonzales's guideline sentence, effectively doubling that sentence by considering only one of the two 3A1.2C1 requires the District Court to find not just that the defendant's actions reasonably caused the victim to fear immediate harm, which the District Court did do here and which we do not challenge, but that enhancement also requires the District Court to find that the defendant intended to and reasonably does cause the victim to fear immediate harm. What about acting with awareness that harm would be imminent? Would that suffice? If the District Court had made a factual finding sufficient to come within that submission with an awareness that this would likely cause harm, it might be enough. But what's troubling here is that we have tension in the guidelines between an intentional act and a reckless act, and that's what we disputed in the District Court. We did not dispute that Mr. Gonzales, in breaching for a firearm, was recklessly causing harm. And in that moment, certainly there were four police officers who saw that. Three did not feel immediately threatened, but one did. And that's enough. That's enough. That's enough. That officer reasonably felt fear. That's enough to satisfy the fear element. But the question is, was the act intentional or was it reckless? And the District Court simply did not resolve that issue. The District Court's factual findings on the issue are contained in its written opinion, which is attached to our brief. The Court found only that Mr. Gonzales lifted up his shirt, reached into his waistband, pulled out a handgun, fumbled it, and it fell to the ground. So is every act of reaching for a gun in the presence of a law enforcement officer an intentional act that is reasonably designed to cause harm, or could it be a reckless act? Now the District Court relied on Ford, and Ford came to the sensible conclusion, based on the cases that it cited, that reaching for a gun during a police encounter creates a substantial risk of harm. But when you look at the cases that were cited by Ford in reaching that conclusion, it doesn't satisfy 3A1.2 unless you can infer intent under those circumstances, which the court in Ford said the District Court could reasonably infer in those circumstances that there was an intent to cause harm. Could you reasonably infer this here? He could have left the gun in the car. When he fumbled it, he could have kept on running and not reached for it? I don't know if we could make that assumption, because then that would eviscerate the recklessness. I think what's really interesting is when we drill down and look at the cases cited in Ford, you have one of two situations. One where an individual discharges a firearm, there's no doubt that that's going to... Why is he taking it, if not to cause fear to the police? I'm not so sure. It was in a holster, so as he's stepping out of the car, what we argued, and I think what the evidence is, is subject to two reasonable inferences. One is that he was drawing it with the intent to aim it at the police officers. Isn't that the one the District Court drew? That's an inference that the District Court drew. But was that reasonable under the circumstance? Because the other inference was he was drawing it to discard it. Now... If he were drawing it to discard it, why would he have reached for it with two hands when it was falling down and he was trying to get away? And I don't know if the record supports that factual conclusion that he was reaching for. Well, that Enzel testified to that. Yes, but... And have the... Don't get me wrong, Judge Seymour. If Judge Parker had said he drew it with a firing grip, then I think our inquiry would be over, because I think that you can infer intent under those circumstances. And the case that I would cite for that is Robinson. You know, Robinson, at page, if I'll get the right page number, 803, that's 537F798 at 803, talks about two reasonable explanations. One of which is he's drawing the gun because he intended to use it unlawfully against the officer, which is what the Court found in Robinson. Judge Parker's finding is not nearly so sweeping, because Robinson goes on to say there was, of course, another reasonable explanation, that Robinson was trying to get rid of the gun before the police found it. And in Robinson, they said, well, you can't really draw that conclusion if the Court finds that he was drawing the gun because he intended to use it unlawfully against the officers. But Judge Parker didn't make that finding here. What we have here is we have a two-part formula. Why else would he be drawing his gun? Because he's aware of the habit of the Albuquerque Police Department. At that time, Albuquerque was under a consent decree from the Justice Department, because we had basically one officer-involved killing of a suspect every month for many months over a year. So that, now, it would have been better in hindsight for Mr. Gonzalez to get on the stand and testify to this. I'm going to concede that, and that was probably my error. But we were arguing instead, short of his testimony, that the evidence was susceptible of two reasonable inferences. And when he's pulling a gun, it would be reasonable to think, I'm going to get rid of this gun so I won't get shot, either when I'm running or when I'm going on or when I'm trying to escape. And when you look at the case itself- And what's the other inference? And the other inference is? The other inference is, I'm guarding this gun because it's shootout time at the OK Corral. And isn't that the one, Mr. Court? Don't think on the factual findings that the court made that you can draw that conclusion. And this is why, Judge Seymour. In all the other cases that were cited in Ford, you had, like I said, either a discharge or you had a reach during a physical act of resistance. You had officers saying to the suspect, drop the weapon, put it down, let it go, stop fighting. You had none of that here. None of that. There wasn't time, was there? He was not caught with it, no. He had discarded it and he ran. And I think that's where we do have a situation where the court failed to consider both elements of the aggravated assault necessary to impose the six-level enhancement rather than the three-level enhancement. And this is the reason why. Could I just interject here to make sure I'm understanding the argument? Seems like in the last few minutes, the discussion was, what can one infer from what happened? And that seems factual in nature. But at the beginning of your argument, and as I'm understanding your brief, isn't your challenge not so much to what inferences could be drawn, but more to the standard that the court applied in the sense that, aren't you arguing that the court failed to address the intent part of the standard? Yes. In other words, you're not challenging a factual determination. You're challenging that the complete standard wasn't applied. Am I understanding your argument correctly? That's correct, Justice Matheson. That is my argument. And I apologize that me and my dancing angels, pin dancing angels, haven't made that clear. But what we have here is we have a legal standard that the court failed to apply. Well, okay. But let me ask you, if we agree with that argument, wasn't the record sufficient to draw the inference of intent? Would we need to, even if you're correct that the court didn't specifically address intent, that the record is sufficient to uphold the court's sentence? Don't think it is, Judge Matheson. The reason I say that is because the court focused exclusively on the second element, whether or not the act reasonably caused the victim to fear. And the court focused on that to the exclusion of whether or not the act was intended to cause the victim's fear. No, I understand. The focus was on the victim as opposed to Mr. Gonzales, correct? Correct. All right. I think I understand that. One thing has been puzzling me. I don't know if this necessarily goes to the heart of the argument, but the guideline note talks about conduct tantamount to aggravated assault. I'm not really sure what that means. I take it that it includes conduct that falls short of aggravated assault, but is kind of close to it. That I'm not so sure. Oh, that's what I'm asking. I think I'd phrase it like this. It involves conduct that encompasses one of two elements of the traditional common law notion of aggravated assault. One, an attempted but unsuccessful battery, or what's called menacing. And really, we have the menacing portion of the statute at issue here. To menace someone isn't simply to brandish a firearm. It is to brandish the firearm with the intent to cause them. But don't the cases that apply this guideline typically look to the common law definition of simple assault as opposed to aggravated assault? Not simple assault, because the guidelines themselves say it's to apply in circumstances tantamount to aggravated assault. And aggravated assault, like I say, involves traditionally either an attempted battery or menacing. And I don't think we have the attempted battery. So the question here is, is this menacing? Is this brandishing a firearm with the intent to cause someone to fear for their safety? I had thought that you had argued, maybe I just misheard your brief for misremembering it, but I had thought you had argued in your brief that the common law definition of simple or menacing. I may be overstating simple assault, but I think what we tried to argue was that those are the elements of aggravated assault. Aggravated? Yes, sir. That it's either the attempted battery or the menacing. In the circumstances of this case, this is why it makes a difference. Because the question will then be, is every act of reaching for a firearm in the presence of law enforcement officers? Is that always an intentional act designed to cause fear? Or could there be circumstances where that is recklessly done? And that's what divided the parties in this case, and that's what focused the issue in this case. And I think that although Ford talks about reaching for a gun during a police encounter does in fact create a substantial risk of harm, and I don't think anyone denies that, I think Ford is incomplete in deciding whether or not on these facts, under these circumstances, is it reasonable to infer that every time you reach for a gun in the presence of the police, you're intentionally intending to cause harm. And I think this is one of those cases, particularly where you don't have the police saying, drop the weapon, or you don't have an act of actual physical resistance where the defendant is trying to go for the weapon. In those cases, inferring intent is not a difficult thing to do, because you're being grabbed, you're reaching for something that could cause harm, you're intending to continue this process. But when you're getting out of a car, and you're reaching for a gun, and you fumble it and it falls to the ground, is that intentional? Is that reckless? We respectfully submit that the district court erred in finding that it was intentional. And unless the court has additional questions, I'd like to reserve the balance of my time. Thank you, counsel. May it please the court. Counsel, my name is Marissa Ong, and I'm an assistant United States attorney in the District of New Mexico. I'd like to begin with a question that you asked Judge Matheson, and that's the language in the guideline about it being tantamount to aggravated assault. I would propose that the reason why that's in the guideline is because the commission wanted to punish conduct that involved either the use of a deadly weapon, or conduct that actually did result in serious bodily harm. Moving forward, it's our position that a defendant assaults an official victim when the defendant's actions would put an enforcement officer in reasonable apprehension of suffering bodily harm. How would that differ under 3A? How then would you differentiate between 3C1.2 and 3A1.2? So the difference is that the conduct in 3C1.2 is not specified to a law enforcement officer. In 3C1.2, you can put anyone in danger. And so the difference is that the commission has decided to punish more harshly when you put an actual law enforcement officer. Is there, regardless of whether it's assault or aggravated assault, do we apply the common law definition? So courts that have looked to this, including this court and Ford, say to apply the common law definition. And doesn't the common law definition of at least aggravated assault contemplate either an intent to commit a battery or menacing? Yes. But if you look at simple assault, then, and I'm taking this from the Calderon case that this court decided, that involves an attempt to commit a battery or an act of putting another in reasonable apprehension of bodily harm. Is there not, for the second part of that definition, is there no intent element at all? It's our position that there's not, and that there's nothing in the language of the guidelines in this court's precedent that would require this court to read an intent element into the official victim guideline here. If, for purposes of hypothetical, I suppose, if we were to say that under 3A1.2, there is a requirement for some form of intent, by definition, isn't there error? Because on page 3, the district court specifically said, subjective intent is not part of the analysis. No, Your Honor, because this court could infer from the record what the defendant's intent in this case was. Wouldn't we have to conclude, for purposes of harmlessness, correct? But there would be an error. That's why I was asking, there would be an error. I mean, maybe it's not a, maybe it's a. I still don't believe there would be an error, because there's nothing on point in this circuit that directed the district court to apply a level of intent to the defendant. And I think the Lee court said it best, even if you're looking at the common law definition of assault, the scientier requirement for common law assault is blurred by confusion and contradiction. And so it's not entirely clear from a review of the cases in this circuit or circuits outside that there is an actual requirement that there be an intent element for that guideline. Are we really talking about whether there should be a specific intent requirement or whether you can infer a general intent requirement by the conduct? And I'm sorry, Judge Seymour, I just missed the first part of your question. Difference between specific intent versus general intent. So I think that's kind of what this breaks down to. And our position is actually that, I mean, I guess I would call it, you know, first, that you don't have to read an intent requirement into it. But then the second intent element that we're talking about, which would be an awareness of consequences, that's more akin to general intent. And then specific intent is that he has to actually intend for the recipient to feel the harm of his actions. And so, yes, I think it does break down into those, well, our position is that you could break it down into three different intent elements. The first being that there is no requirement for any intent at all. I was a little confused about your response to Judge Bachrach when he was asking about looking to these common law definitions of intent and correct me if I'm wrong, but what I heard you say, well, there's no, there's nothing in the, this is a guidelines question. There isn't an intent requirement in the guideline, but isn't that the whole point of looking at the common law definitions is to aid us in understanding whether the reference to assault in the guideline means that there's an intent requirement in applying the guideline. It's just that the common law is being used as the source of guidance there. Yes, absolutely. And the point I was trying to make with Judge Bachrach is that even looking at the common law definition, that doesn't definitively answer the question for you. All right. And I was planning to ask you what your best case was to show that the guideline has no intent requirement. And then we got your 28-J letter yesterday. Is that your best case? Well, I think that the Dean case stands for the proposition that when you're talking about sentencing liability and you've already found that the defendant has committed a wrongful act, there's nothing offensive about punishing the defendant for accidental conduct. There is one case out of the Fifth Circuit, the Carmichael case, that case is unpublished, but in Carmichael, the Fifth Circuit did specifically find that there is no intent requirement for the official victim guideline. I just, what I'm having trouble with here is that the courts that have looked at this issue in the past have looked to these common law definitions of assault, whereas the Dean case isn't really dealing with assault at all, and it's a 924C mandatory minimum. I mean, that's why I'm saying, is that really your best case? Well, Your Honor, the reason why I submitted that case is because I think that the Supreme Court and Dean, what they discussed is whether or not it was appropriate to punish conduct when the defendant acts accidentally. And there, what they said was, in that context, you're accounting for the harm resulting from the manner in which a crime is committed, and I think that that same type of rationale can be applied to looking at the case. I think I understand your point. All right, thank you. The Boisel case, the unpublished case out of the Tenth Circuit, I also believe that that's a very good case for us. This court found in an unpublished decision that the act of reaching for a loaded firearm was enough. The fact that the defendant did not actually point the weapon at an officer did not mean that he was not going to use it. So, based on your drawing that persuasive influence from Boisel, are you saying that there has to be an intent to, I think you used, to reach, yeah, you said to reach for the gun. So if he's got a gun in his holster, there has to be an intent to reach for it, right? It's merely an intent to engage in an act, and so here, the act would be reaching for the firearm. Does it make a difference of whether there was an intent to reach for the act to drop it or to pull it? Is either one really, can it really be an assault, even a simple assault, if you reach for it and throw it down on the ground? Could he be convicted of assault? Yes, I believe you could, and I think even if you're applying a general intent type of analysis to this, because there you should have an awareness of the consequences of your act. When you're fleeing from law enforcement and you reach for a firearm, it's reasonable for you to know that the law enforcement officer is going to interpret that action as hostile against them. Even if you're just intending to reach for it and, you know, set it up and throw it down? The law enforcement officer has no idea why you're reaching for it, and so certainly if you are going to apply a specific intent type of requirement, then I think your intent does matter. I would point out that here, there's no evidence in the record that he was trying to throw the firearm away. That's simply an argument that was made by his counsel, and Judge Seymour, I think you hit on this, but the district court, not only did Detective Enzel testify that when he fumbled the weapon, he was reaching for it, that is a specific finding that the district court actually made. So if he was simply trying to discard the firearm, then why would he then have attempted to reach for it as it was falling? And so our position is that the record here is clear that you can infer that he did have the requisite intent no matter what standard this court applies. Well, is that a harmless error argument? It comes at the end of your brief. It sort of looks that way, where you say no court has held that a defendant must intend, but even assuming that standard applies, well, the district court didn't apply it. So then you say the record establishes that Gonzalez intended, at least, to cause apprehension. That seems to be the argument you're making now. Isn't that a harmless error argument? I think it's akin to a harmless error argument, and I think that's what occurred in the Ford case. Well, but if we determine that the district court erred in failing to address the intent element here, don't we have to remand under our case law for resentencing? I would say no, Your Honor, and that's because there's ample evidence in the record for this court to infer what the defendant's intent was. Doesn't our case law set a pretty high bar to take up the issue here and go ahead and decide it on harmless error, as opposed to sending it back for resentencing? Have you got a case that, what about the Gieson case? Doesn't that suggest that we should be sending this back if there's error? Well, Your Honor, I would say that that pertains to the way that the district court, that's a legal application. So this court reviews that de novo. The factual findings that the district court made lend itself to- Well, the district court didn't make the finding because it didn't say, it said subjective intent doesn't matter. The district court did say that, but the district court also made a finding that had the defendant not fumbled the weapon, the defendant easily could have used it to seriously wound or kill Detective Enzel, and that's a specific finding that the court did make. But that isn't a mens rea finding, is it? That's not a mens rea finding, but that's a- And isn't mens rea what we're talking about here? It is, Your Honor, but I think if you look to the Ford case, in the Ford case, the district court did not make a specific finding about intent. However, on appeal, this court found that the district court could infer from the record that Ford had the requisite intent in order for the application to apply. Was there an argument in Ford, did our panel address an argument like this, where the district court erroneously applied the legal standard, or was the sufficiency of the evidence to support a 3A1.2 enhancement? I believe in Ford it was more a sufficiency of the evidence, Judge Bacharach. But regardless of the standard that this court can affirm on any ground that's evident in the record, and our first position is that the district court did not err, because there's no precedence from this court that specifically told the district judge it had to apply a specific standard. So what the court did is it looked to the Ford case, to cases outside of the circuit, and came to the conclusion that it didn't have to make a finding with regard to the defendant's intent. There's nothing from this court that would have required it to do that, so it wasn't an error because it wasn't clearly established by this court that that's something that the district judge had to do. And based on the record before this court, there's ample evidence for this court to hold that if there is an intent standard, you are going to apply that it was met in this case. If none of the judges have any additional questions, I'm happy to return the rest of my time. Thank you, Counsel. Thank you. I just have two brief points and an observation. One, we don't have the luxury of reading out the intent requirement, because both the guidelines and this court's decision in Ford make clear that that is a requirement of 3A1. I don't want to take up your rebuttal time, but you said that a few times in your brief, I think, about Ford. And I thought Ford clearly avoided the question and just said, assuming arguendo, that the strictest potential test applies, the evidence was sufficient. But I thought Ford specifically disavowed deciding affirmatively what the test was. Well, I think when Ford says we can infer from the evidence that there was intent, I think it acknowledges it's the rational descending of the decision that you must be able to infer the intent from the circumstances. But I leave it to your judgment more than mine. The only other thing is, it is both a specific and a general intent, this menacing element. And the authority in Lee is best for that. It's at page 19. And they talk about the specific intent, a defendant must have a purpose to cause fear. That's the specific intent. Or is so aware that his actions may cause fear, no one much troubles about his lack of purpose. That, in the circumstances of Lee, was like if you're going to drive straight at a police officer in a car, even if you're just trying, you're not going to actually hit him, you're not even trying to scare him, you're just driving straight at him, you pretty much know that this person's going to be upset. Here we don't have such a bright line because we have an individual who's fleeing with no physical resistance and no command to do anything. And before anyone says anything, he drops a weapon. He retrieves and then fumbles and drops a weapon. And tries to reach for it. I'm sorry? And tries to reach for it. And tries to reach for it, yes. And the only other observation I would make is, the court may want to advise the law clerks that they can sit on this side of the aisle, you know, it feels like an orphaned bride up here. So advised. And unless the court has additional questions for me, I'm prepared to submit them. Thank you. Thank you. Appreciate that observation. It is a good observation. It was. It was. Well, with that, we'll consider this case submitted. And counsel.